UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------

MARCHELLA OF NY INC.
and NORTHEAST BANANA CORP.,

                Plaintiffs,

- against -

MEJIA TROPICAL PRODUCTS LLC
and MARVIN E. MEJIA,

                Defendants.

----------------------------------------

No. 22-cv-551 (JS)(ST)

**MEMORANDUM & ORDER**
**Re: Motion for Contempt**

APPEARANCES
For Plaintiffs:    Gregory A. Brown, Esq.
                  McCarron & Diess
                  576 Broadhollow Road, Suite 105
                  Melville, New York  11747

For Defendants:    No appearance.

SEYBERT, District Judge:

       Presently before the Court is the unopposed Motion for Contempt (hereafter, the "Motion") of Plaintiffs Marchella of NY Inc. ("Marchella") and Northeast Banana Corp. ("Northeast"; together with Marchella, the "Plaintiffs") seeking an order (1) holding defendants Mejia Tropical Products LLC ("Mejia Tropical") and Marvin E. Mejia ("Mejia"; together with Mejia Tropical, the "Defendants") in civil contempt, (2) directing the U.S. Marshals Service hold Mejia in custody pending the purging of the Defendants' contempt, and (3) awarding Plaintiffs the fees and expenses incurred in bringing this Motion.  (See Motion, ECF No. 20; see also Support

Memo, ECF No. 22; Brown Support Decl., ECF No. 21.) For the following reasons, the Motion is GRANTED to the extent articulated herein.

## BACKGROUND

The Court presumes familiarity with the facts underlying this case, but provides the following summary for the reader's convenience, with the facts being drawn primarily from Attorney Brown's Support Declaration (see ECF No. 21).

Marchella commenced this action on January 31, 2022, seeking to recover monies from Defendants, jointly and severally, pursuant to the trust provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, et seq. ("PACA") for wholesale quantities of produce it delivered to Defendants. (See Compl., ECF No. 1.)

Together with its Complaint, Marchella also sought an emergency temporary restraining order against Defendants (see ECF No. 2), which was granted; thus, on January 31, 2022, this Court entered its "Temporary Restraining Order & Order to Show Cause Why a Preliminary Injunction Should Not Be Issued Under Fed. R. Civ. P. 65(b)" (hereafter, the "TRO"). (See ECF No. 9.) Among other things, the TRO scheduled a February 10, 2022 hearing on Marchella's motion for a preliminary injunction against Defendants. (See Prelim. Inj. Mot., ECF No. 3.)

On February 7, 2022, Northeast joined in this action with the filing of an amended complaint (See Am. Compl., ECF No. 11). In aggregate, the Plaintiffs seek $209,252.50 in PACA trust assets from Defendants. Northeast also joined Marchella's request for a preliminary injunction. (See Am. Mot. Prelim. Inj., ECF No. 12.)

At the February 10, 2022 preliminary injunction hearing, no one appeared for the Defendants. (See Feb. 10., 2022 Min. Entry, ECF No. 16; see also Brown Support Decl. ¶ 7 ("Despite Defendants having been served twice, they failed to appear at the February 10 preliminary injunction hearing.").) Upon a showing that Plaintiffs were entitled to a preliminary injunction under PACA, the Court granted the amended preliminary injunction motion. (See Minute Entry, ECF No. 16.) In its Preliminary Injunction Order (hereafter, the "PI Order"), the Court directed, in relevant part, that Defendants and others, including Defendants' successors, "deliver to Plaintiffs' counsel the sum of $209,252.50 by bank check or wire transfer" and:

> that within five business days of the date of this Order, Defendants shall supply to Plaintiffs' counsel the following documents regarding the assets of Mejia Tropical, its successors, subsidiaries and related companies: (1) most recent balance sheets and profit/loss statements; (2) all accounts receivable records showing all funds collected by or on behalf of Defendants in the last sixty days in addition to all records showing accounts receivable currently outstanding,

> including names, addresses, amounts and other documentation such as invoices and account statements necessary for collection purposes; (3) all documents related to funds owed to Defendants on behalf of credit/debit card processors and any other electronic funds transfers due Defendants; and (4) all financial records, such as income tax returns, bank account statements, checking account registers and cash receipt records, showing transfer of funds to or from Mejia Tropical in the last six months; and . . . .
>
> Defendants shall take such steps as are necessary to preserve all of Mejia Tropical's books and records, whether electronic or otherwise, and are required to fully cooperate with Plaintiffs' attorneys' efforts to effect collection of the accounts receivable of Mejia Tropical, its successors, subsidiaries and related companies by, among other things, providing Plaintiffs' attorneys with any and all documents and things, including but not limited to computers, software, usernames, passwords and documents, reasonably requested by Plaintiffs' counsel in connection with their collection efforts.

(PI Order, ECF No. 18, at 4, 5 (emphases added).) The PI Order "was served on Defendants in the same manner as required by the Federal Rules for service of a summons. Plaintiffs caused a copy of the PI Order to be left with a person of suitable age and discretion at Mejia's home and by delivering a copy of the PI Order to the New York State Secretary of State." (Brown Support Decl. ¶ 10 (citing ECF Nos. 17 and 19, respectively).) Further, Plaintiffs' counsel "personally sent a text message to . . . Mejia's last known cell phone number providing a link Mejia could use to view a PDF of the PI Order." (Id. ¶ 11.) However,

"[d]espite Plaintiffs' efforts to ensure Defendants received a copy of the PI Order, Defendants have not contacted [Plaintiffs' counsel's] office or either of the Plaintiffs since the commencement of this action." (Id. ¶ 12.)

To date, Plaintiffs' counsel has collected $10,522.00 of the aggregate $209,252.50 due the Plaintiffs from the PACA trust assets held by Defendants. (See Brown Support Decl. ¶¶ 3, 15.) Plaintiffs' counsel has not received any documentation from Defendants. (See id. ¶ 12 ("Defendants have not produced a single document to my office, turned over so much as a penny, nor have they participated in any way with my office's efforts to collect Mejia Tropical's accounts receivable.").) Further, a review of the Case Docket comports with Plaintiffs' counsel's averment that "Mejia has completely ignored this action and has not taken any steps to comply with the clear provisions of the PI Order." (Id.; cf. Case Docket, in toto.)

## DISCUSSION

I. Applicable Law

> A party or nonparty may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.

CF Fresh, LLC v. Carioto Produce, Inc., No. 20-CV-0884, 2022 WL 247743, at *4 (N.D.N.Y. Jan. 27, 2022) (quoting Fox v. Lee, No. 15-CV-0390, 2018 WL 1187404, at *3 (N.D.N.Y. Feb. 5, 2018); further citation omitted). "A party who violates an injunction entered by the district court faces the threat of both civil and criminal contempt." Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 657 (2d Cir. 2004); see also 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none others as . . . [d]isobedience or resistance to its lawful writ, process, order, rule decree, or command."); Leser v. U.S. Bank Nat'l Ass'n, No. 09-CV-2362, 2011 WL 1004708, *6 (E.D.N.Y. Mar. 18, 2011) ("[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." (citations omitted)).

"The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." Paramedics Electromedicina, 369 F.3d at 657 (citation omitted). "A district court has 'considerable discretion in determining whether a coercive sanction is necessary and, if so, the form it will take.'" Leser, 2011 WL 1004708, *14 (quoting Leadsinger v. Cole, No. 05-CV-5606, 2006 WL 2266312, at *21 (S.D.N.Y. Aug. 4, 2006), and collecting cases). Factors a court should consider when

determining whether civil contempt sanctions should be imposed are: "(1) the character and magnitude of the harm threatened by continued contempt, (2) the probable effectiveness of the proposed sanction, and (3) the financial consequences of that sanction upon the contemnor [(hereafter, the "Contempt Sanction Factors")]." In re Grand Jury Witness, 835 F.2d 437, 443 (2d Cir. 1987) (citing United States v. United Mine Workers of Am., 330 U.S. 258, 304 (1947); further citation omitted)). "Arrest is an appropriate sanction for civil contempt as long as the confinement is conditioned upon compliance." Leser, 2011 WL 1004708, at *14 (quoting Leadsinger, 2006 WL 2266312, at *21, and collecting cases). However, "in selecting contempt sanctions, a court is obligated to use the 'least possible power adequate to the end proposed.'" Id. at *11 (quoting Shillitani v. United States, 384 U.S. 364, 371 (1966); further citation omitted).

## II. Application

The record in this action convincingly supports finding: (1) Defendants had notice of the PI Order (see, e.g., Affs. of Serv., ECF Nos. 17, 19; see also Brown Support Decl. ¶¶ 10-11, 18); (2) the PI Order is clear and unambiguous, especially as to the Defendants' obligations to, inter alia, "deliver any and all PACA trust assets held on Defendants' behalf, up to $209,252.50, to counsel for Plaintiffs" (PI Order at 4), and turn over to Plaintiffs' counsel various documents regarding the assets of

-7-

Mejia Tropical (see id.; see also id. at 5.); (3) Defendants clearly are in noncompliance with the PI Order having failed to deliver to Plaintiffs' counsel the subject PACA trust assets, with counsel having been able to recover only $10,522.00 of the $209,252.50 owed to Plaintiffs (see, e.g., Brown Support Decl. ¶ 13); and (4) the Defendants have not diligently attempted to comply in a reasonable manner with the PI Order (see, e.g., id. ¶¶ 12-14).

More specifically as to Defendants' lack of diligence in compliance:  To the extent Mejia has formed a new entity, i.e., Island Banana Corp., as a means of avoiding the consequences of the PI Order (see, e.g., id. ¶¶ 16-18; see also Ex. D, ECF No. 21-1 at ECF pp.14-17), that effort is unavailing.  As Plaintiffs astutely argue, "Island Banana Corp. is run by the same principal[], out of the same location, and sells produce to the same customers" and "appears to be a clear successor to Mejia Tropical, [which] is thus subject to the PI Order, and is also subject to Mejia Tropical's PACA liability."  (Support Memo at 4 (citing S. Katzman Produce, Inc. v. JAT Bev. Inc., No. 17-CV-7930, 2018 WL 6437058, at *4 (S.D.N.Y. Dec. 7, 2018)).)  Indeed, the Court clearly states at several points in the PI Order that it also applies to the Defendants' successors.  (See PI Order at 4 (unnumbered Decretal ¶¶ 2-3); id. at 5 (unnumbered Decretal ¶¶ 5-6).)  This, together with the Court's findings delineated above,

warrants holding Defendants in civil contempt for willfully failing to comply with their obligations under the PI Order.

Given the Defendants' civil contempt, Plaintiffs request the Court issue an order directing the U.S. Marshals Service hold Mejia in custody pending Defendants purging of that contempt; Plaintiffs further seek an award of their legal fees and expenses incurred in bringing this Motion. (See Motion at 5.) Despite the evidence that (i) Defendants know of the PI Order and are deliberately violating it, (ii) Mejia Tropical's successor, Island Banana Corp., is also in noncompliance of the PI Order, to which it is subject, and (iii) Defendants are on notice of this Motion, including the relief sought by Plaintiffs (see Affs. Serv., ECF Nos. 23, 24); and, notwithstanding (iv) this Court's discretion to fashion a coercive remedy, which may include detention, see, e.g., EEOC v. Local 28 of the Sheet Metal Workers Int'l Ass'n, 247 F.3d 333, 336 (2d Cir. 2001); N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1353 (2d Cir. 1989), and (v) the likelihood that (a) the subject trust assets have been dissipated, and (b) that Defendants cannot or will not comply with a monetary sanction, the Court will afford Defendants a final, short opportunity to come into compliance with the PI Order and, thus, voluntarily purge their contempt before imposing the draconian condition of detention to coerce said compliance. However, **DEFENDANTS ARE ON NOTICE: Failure to turn over to Plaintiffs' counsel within five**

**(5) business days from the date of service of this Memorandum & Order either the balance of the trust assets or the requested documents will result in the Court directing the U.S. Marshals Service to hold Mejia in custody pending the perjuring of Defendants' contempt**. This interim approach strikes a balance between the Court's consideration of the Contempt Sanction Factors and the relief requested by Plaintiffs; by providing Defendants with a final, short time within which to comply with the PI Order before issuing an order for Mejia's detention, this Order is intended to impact Defendants using the "least possible power adequate to the end proposed."

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

A. Plaintiffs' Motion (ECF No. 20) is **GRANTED**, with the Court finding the Defendants are in contempt of the PI Order;

B. Defendant shall have five (5) business days from the date of service of this Memorandum & Order to turn over to Plaintiffs' counsel either (1) the balance of the trust assets or (2) the requested documents as more fully detailed in the PI Order (see PI Order at 4 (unnumbered Decretal ¶ 3), and at 5 (unnumbered Decretal ¶7));

C. **If Defendants fail to timely turn over to Plaintiffs' counsel either the balance of the trust assets or the requested documents, then upon the filing of an affidavit by Plaintiffs**

**that Defendants are also in noncompliance with this Memorandum & Order, the Court WILL issue a further order directing the U.S. Marshals Service to hold Mejia in custody pending the purging of Defendants' contempt**;

D. Plaintiffs shall have until July 29, 2022 to move for an award of their legal fees and expenses incurred in bringing this Motion; and

E. Plaintiffs are to serve Defendants with a copy of this Order, either personally or by an express, overnight delivery service (e.g., Federal Express) **by no later than 6:00 p.m. (E.S.T.) on Friday, June 24, 2022** and file proof of said service forthwith.

**SO ORDERED.**
/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: June 22, 2022
       Central Islip, New York