UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARCHELLA OF NY INC.
and NORTHEAST BANANA CORP.,

                    Plaintiffs,

       - against -

MEJIA TROPICAL PRODUCTS LLC
and MARVIN E. MEJIA,

                  Defendants.

No. 22-cv-551 (JS)(ST)

**MEMORANDUM & ORDER GRANTING in part and DENYING in part MOTION FOR DEFAULT JUDGMENT**

APPEARANCES
For Plaintiffs:    Gregory A. Brown, Esq.
                    McCarron & Diess
                    200 Broadhollow Road, Suite 207
                    Melville, New York  11747

For Defendants:    No appearance.

SEYBERT, District Judge:

<u>INTRODUCITON</u>

       This case arises under the trust provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c)(4) ("PACA"), a remedial statute designed to protect sellers of perishable commodities who, without the statute, would lack any way to secure themselves against nonpayment by their customers. By this action, Plaintiffs Marchella of NY, Inc. ("Marchella") and Northeast Banana Corp ("NE Banana", and together with Marchella, the "Plaintiffs") seek to recover monies from Defendants Mejia Tropical Products LLC ("Mejia Tropical") and Marvin E. Mejia

("Mejia" and with Mejia Tropical, the "Defendants"), jointly and severally and pursuant to PACA's trust provisions, for wholesale quantities of produce Plaintiffs delivered to Defendants. (See Am. Compl., ECF No. 11.) Currently before the Court is Plaintiffs' Motion for Default Judgment (hereafter, the "Motion"). (See ECF No. 45; see also Support Memo, ECF No. 49.) Despite service of the Motion upon the Defendants, the Motion is unopposed. (See Aff. of Serv., ECF No. 50; Letter, ECF No. 51 (noting Defendants' failure to timely oppose Motion).) For the reasons stated herein, the Motion is GRANTED in part and DENIED in part.

<u>BACKGROUND</u>

I.  <u>Relevant Factual Background</u>

The Court assumes the parties' familiarity with the underlying facts giving rise to this action. For the reader's convenience, it is sufficient to state that Plaintiffs sold bananas and other produce (hereafter, the "Produce") to Defendants on a wholesale basis and subject to the PACA trust provisions, and that Defendants resold said Produce to various food stores and other establishments. As is relevant here, by the time Plaintiffs commenced this action in 2022, Defendants had ceased paying Plaintiffs for the delivered Produce and owed the Plaintiffs in excess of $209,000.00. Eventually, Plaintiffs were able to collect approximately $10,000.00 from a couple of Defendants' customers.

II.  Relevant Procedural Background

Despite a Preliminary Injunction Order being entered directing Defendants to comply with their PACA obligations to pay Plaintiffs for the Produce (see ECF No. 18), they failed to do so. Defendants were ultimately found to be in contempt of the Preliminary Injunction Order (see ECF No. 26; see also Order of Continued Contempt, ECF No. 31; Amended Order of Continued Contempt, ECF No. 36); however, notwithstanding being afforded the opportunity to purge themselves of contempt, Defendants failed to do so.  And, even though Mejia appeared at the September 2022 contempt hearing and a related status conference in October 2022, he never answered Plaintiffs' Amended Complaint.[1]  (See Case Docket, in toto.)  Relatedly, Mejia Tropical never made an appearance in this action.  (See id.)

Thereafter, on December 5, 2022, the Clerk's Entry of Default was filed.  (See ECF No. 44.)  Plaintiffs now move for default judgment relying upon: (1) their Amended Complaint; as further supported by (2) the sworn affidavits of (i) Plaintiffs' counsel, Attorney Brown (ECF No. 46), (ii) Ms. Khaimova for Marchella (ECF No. 47), and (iii) Mr. Balducci for NE Banana (ECF No. 48) (collectively, the "Supporting Affidavits"); and other

---

[1]  Mejia failed to appear at the December 5, 2022 continued contempt hearing (see Minute. Entry, ECF No. 42, at 1) and has not been heard from since the October 2022 status conference (see Case Docket).

documentary evidence attached to the Supporting Affidavits.  As stated, _supra_, despite Defendants being served with the Motion, they have not opposed it; their time to do so has long since expired.

DISCUSSION

I.   Applicable Law

"Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation."  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir.2004).  "Rule 55 provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment."  City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir 2011) (quoting New York v. Green, 420 F.3d 99, 104 (2d Cir.2005).

Entry of default is appropriate where a "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  FED. R. CIV. P. 55(a).  A defendant's default constitutes "an admission of all well-pleaded allegations" against [it]."  A&B Alt. Mktg. v. Int'l Quality Fruit Inc., 35 F.4th 913 (2d Cir. 2022); Mickalis Pawn Shop, 645 F.3d at 128 ("The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff.").

Upon the satisfaction of the first step, the second step of Rule 55 must then be satisfied. "The second step, entry of a default judgment [pursuant to Rule 55(b)], converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." Mickalis Pawn Shop, 645 F.3d at 128. When determining whether default judgment is warranted, the court reviews a plaintiff's allegations to decide whether said allegations establish a defendant's liability as a matter of law. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009); see also A&B Alt. Mktg. v. Int'l Quality Fruit Inc., 521 F. Supp. 3d 170, 175–76 (E.D.N.Y. 2021) ("It is hornbook law that on a motion for default judgment, the well-pleaded allegations of the complaint pertaining to liability are accepted as true." (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992))).

Further, "[i]t is well-settled that on a motion for default judgment, a defendant's default does not constitute an admission as to the damages claimed in the complaint." A&B Alt. Mktg., 521 F. Supp. 3d at 176 (citation omitted). Rather, it is the plaintiff's burden to establish entitlement to requested damages. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); see also A&B Alt. Mktg., 521 F. Supp.

3d at 176 (same).  "To determine damages, the court may conduct an inquest or it may rely on the affidavits and other documentary evidence provided by plaintiff, obviating the need for a hearing on damages."  A&B Alt. Mktg., 521 F. Supp. 3d at 176 (first citing FED. R. CIV. P. 55(b)(2)(B); then citing Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 189 (2d Cir. 2015)).

II.  Analysis

As an initial matter, the Court relies upon the relevant legal standards, analyses, and reasoning articulated in a report and recommendation in another recent PACA case from this District where Plaintiffs' counsel was counsel for the plaintiff seeking default judgment, to wit, Ryeco, LLC v. Legend Produce, Inc., No. 20-CV-4044, 2021 WL 2742873 (E.D.N.Y. May 24, 2021) (hereafter, the "Ryeco R&R Decision").  Of significance:  The Ryeco plaintiff did not lodge any objections to the Ryeco R&R Decision, which was adopted in its entirety by District Judge Block.  See Ryeco, 2021 WL 2741605 (E.D.N.Y. July 1, 2021) (adopting report and recommendation).  Said legal standards, analyses and reasonings are incorporated by reference herein.

A. Service of Process and Default

As a threshold matter, the Court makes the following findings.  The record reflects that proper service has been made on Defendants. (See ECF Nos. 10, 14; see also, e.g., ECF Nos. 17,

18, 22, 24, 27, 28, 29, 37, 41.)   As noted, review of the Case
Docket establishes that no answer, motion or other appearance was
filed by or on behalf of the Defendants.   (See Case Docket, in
toto.)   Further, the Clerk of Court properly entered notation of
Defendants' default pursuant to Rule 55(a) of the Federal Rules of
Civil Procedure.   (See Entry of Default, ECF No. 44.)

   B. Liability

   1. As to Mejia Tropical

      To recover monies from a PACA trust, a
      plaintiff must show five elements:

         (1) the commodities sold were
         perishable           agricultural
         commodities; (2) the purchaser of
         the    perishable    agricultural
         commodities    was    a    commission
         merchant, dealer, or broker; (3) the
         transaction occurred in interstate
         or foreign commerce; (4) the seller
         has not received full payment on the
         transaction; and (5) the seller
         preserved its trust rights by giving
         written notice to the purchaser of
         its   intention   to[   ]   do   so
         [(hereafter, the "PACA Recovery
         Elements")].

Ryeco R&R Decision, at *3.   Upon examination of the Amended
Complaint, the Motion, and the Supporting Affidavits, together
with their respective supporting evidence, and for substantially
the same reasons as discussed in the Ryeco R&R Decision when
examining each of PACA Recovery Elements, the Court finds
Plaintiffs' uncontroverted allegations establish each of the

requisite PACA Recovery Elements warranting judgment in their favor as to their PACA-related causes of action, i.e., the Second, Third, and Fourth Causes of Action.

Plaintiffs have also shown they are entitled to default judgment against Mejia Tropical for failure to pay for goods sold, their Fourth Cause of Action.  By their Amended Complaint and the Khaimova and Balduccia Affidavits, Plaintiffs have established the purchase and sale of the Produce, as well as Mejia Tropical's failure to pay for the invoiced and delivered Produce.  (See Am. Compl. ¶¶8-13; Khaimova Aff. ¶¶ 5-6; Balduccia Aff. ¶¶ 5-6.)  See also, e.g., Alessi Equip., Inc. v. Am. Piledriving Equip., Inc., 578 F. Supp. 3d 467, 507 (S.D.N.Y. 2022) ("The U.C.C. provides that a seller is entitled to payment for goods sold and delivered to the buyer, which the buyer then accepts.  The buyer may thus bring a breach of contract action for the price of goods sold and delivered by showing 'the purchase, sale and delivery of [such] goods at an established price and nonpayment therefor.'" (first citing N.Y. U.C.C. Law § 2-607(1); then quoting Conocophillips v. 261 E. Merrick Rd. Corp., 428 F. Supp. 2d 111, 126 (E.D.N.Y. 2006)).

For essentially the same reasons, Plaintiffs have also established their entitlement to default judgment against Mejia for their breach of contract claim, i.e., the Fifth Cause of Action.  For clarity, it is well-established that an invoice

between merchants is deemed a contract.  See generally NE Trading, Inc. v. Ven-Co Produce, Inc., No. 09-CV-7767, 2011 WL 4444511, at *5 (S.D.N.Y. Sept. 26, 2011)) ("When the contract is between merchants, 'inclusion of terms in the seller's invoice, without protest from the buyer on receipt, makes the invoice terms the terms of the contract.'" (citation omitted)).  Examining the Amended Complaint, as well as the Khaimova and Balduccia Affidavits, shows Plaintiffs' invoices to Mejia Tropical were the parties' contracts.  Further examination of those same documents also establishes that Plaintiffs complied with their contractual obligations by delivering the aggregate amount of $209,252.50 worth of Produce to Mejia Tropical, but that Mejia Tropical did not comply with its contractual obligations by failing to pay the $209,252.50 for the delivered Produce.  Hence, Mejia Tropical's liability for breach of contract is established.

   2. As to Mejia, Individually

   As aptly stated by Plaintiffs: "According to PACA jurisprudence, an individual who is in a position to oversee the proper application of the PACA trust assets, and who does not preserve the trust assets for the beneficiaries, for whatever reason and however innocent, has breached a fiduciary duty and is personally liable for that tortious act."  (Support Memo at ECF p.12 (citing S. Katzman Produce Inc. v. Yadid, 999 F.3d 867 (2d Cir. 2021))); see also Ryeco R&R Decision, at *6 ("Officers and

directors of a corporation who are considered in a 'position of control' over the PACA trust assets, can be held personally liable for the breach of the PACA trust even if they did not personally dissipate the assets." (citation omitted)).  Because Mejia admitted "he is the sole stockholder of Mejia Tropical and that he did 'everything' at the business, including having sole check signing authority and deciding which of Mejia Tropical's suppliers to pay and when," the Court agrees Plaintiffs have established that Mejia is personally liable for the debt to Plaintiffs. (Support Memo at ECF pp. 11-12 (citing Mejia Dep. Tr., Ex. 5, ECF No. 46-5, underline attached to Brown Aff.).)  See also Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 705, 707 (2d Cir. 2007).

    C. Damages

       1. Pre-Judgment Interest

        "While PACA 'does not itself establish a right to interest and collection costs,' courts have found that 'the purchaser is required to pay such items when the parties' contract so provides,' and thus, 'in such a case, the interest and collection costs become subject to the PACA trust together with the principal debt.'"  Ryeco R&R Decision, at *9 (quoting G & P Warehouse, Inc. v. Cho's Church Ave. Fruit Mkt., No. 15-CV-6174, 2016 WL 5802747, at *7 (E.D.N.Y. Aug. 12, 2016); further citation omitted).  As to Marchella:  Because Marchella's invoices include

the term of added interest at a rate of 18% per annum on untimely payments (see, e.g., Marchella Invoice, ECF No. 4-2 at ECF p.4.), it has established its right to such damages.  Conversely, as to NE Banana:  NE Banana's invoices do not include terms regarding the charging of interest on overdue payments.  (See, e.g., NE Banana Invoice, ECF No. 13-2 at ECF p.4.)  However, NE Banana has requested prejudgment interest at a 9% per annum rate pursuant to Sections 5001 and 5004 of New York Civil Practice Law and Rules. (See Am. Compl. ¶46.)  In line with the reasoning articulated in the Ryeco R&R Decision on this issue, see 2021 WL 2742873, at *9, the Court finds NE Banana has established its entitlement to prejudgment interest at a 9% per annum rate.

     2. Attorneys' Fees and Costs

     Similarly, finding its statement of the law sound, and its reasoning thorough and well-articulated, the Court follows the Ryeco Court's lead in determining whether Plaintiffs have established entitlement to the attorneys' fees and costs.  Based upon the Court's review of the Plaintiffs' respective Invoices, Plaintiffs have established their entitlement to an award of attorneys' fees and costs.  (See, e.g., Marchella Invoice, ECF No. 4-2 at ECF p.4; NE Banana Invoice, ECF No. 13-2 at ECF p.4.)  Such damages shall be awarded as follows.

a. <u>Attorney Fees</u>

i.   <u>Hourly Rates</u>

There is no reason to deviate from the rates recommended by the <u>Ryeco</u> Magistrate Judge, especially since: (1) it is the requesting party's burden to establish that the requested hourly rate is reasonable; and (2) the information provided by Attorney Brown regarding requested rates in light of the attorneys' respective experience is minimal.  <u>See, e.g.</u>, <u>Gesualdi v. Bestech Transport, LLC</u>, No. 14-CV-1110, 2022 WL 866853, at *3 (E.D.N.Y. Mar. 23, 2022) ("It is Plaintiffs' burden to 'offer evidence to the Court in addition to the attorney's own affidavits why its requested fee is appropriate.'"(citations omitted)).  "'In light of the cursory nature of the information provided concerning each attorney's background and experience 'the Court will rely on the decisional law and its own experience in assessing the reasonableness of Plaintiffs' requested rates.'"  <u>Id.</u> (quoting <u>Div. 1181 Amalgamated Transit Union—N.Y. Emps. Pension Fund v. D & A Bus Co.</u>, 270 F. Supp. 3d 593, 622 (E.D.N.Y. 2017); further citation omitted).  Thus, as did the <u>Ryeco</u> Court, this Court finds a reasonable rate for Attorney Brown's services in this case to be $385.00 per hour and a reasonable rate for Attorney Diess' services in this case to be $425.00 per hour.  By correlation, the Court finds a reasonable rate for Attorney Surbey's services in this case to be $350.00 per hour since he has been practicing law five

(5) years less than Attorney Brown. Cf. Pilitz v. Inc. Vill. of Freeport, No. 07-CV-4078, 2011 WL 5825138, at *5 (E.D.N.Y. Nov. 17, 2011) ("Where, as here, the moving party fails to provide any biographical information to support the reasonableness of the rates, the court may use its discretion to award fees at a lower rate than requested."); Bank of Am., N.A. v. Jacobi Tool & Die M.F.G., Inc., No. 17-CV-6828, 2019 WL 7599891, at *4 n.4 (E.D.N.Y. Oct. 22, 2019).

    ii. <u>Time Billed</u>

Given the Court's familiarity with this case and its careful review of the billable hours charged, it finds that the hours expended by Attorneys Brown (73.60 hours), Diess (3.10 hours), and Surbey (3.10 hours) were not excessive, redundant or otherwise unnecessary.

Accordingly, Plaintiffs have established entitlement to attorneys' fees in the amount of $30,738.50, as calculated, below:

| Attorney | Hourly Rate | Hours Worked | Total |
|---|---|---|---|
| Brown | $385.00 | 73.60 | $28,336.00 |
| Diess | $425.00 | 3.10 | $1,317.50 |
| Surbey | $350.00 | 3.10 | $1,085.00 |
| | | **TOTAL:** | **$30,738.50** |

    b. <u>Costs</u>

"The party seeking to recover costs 'bears the burden of adequately documenting and itemizing the costs requested.'" Datiz v. Int'l Recovery Assocs., Inc., No. 15-CV-3549, 2020 WL 5899881, at *14 (E.D.N.Y. Mar. 12, 2020) (quoting Ganci v. U.S. Limousine

Serv. Ltd., No. 10-CV-3027, 2015 WL 1529772, at *8 (E.D.N.Y. Apr. 2, 2015) (citation omitted)), report and recommendation adopted as modified, 2020 WL 3790348 (E.D.N.Y. July 7, 2020) (modification unrelated to denial of costs); D & A Bus, 270 F. Supp. 3d at 628 ("[I]t is incumbent upon the party seeking reimbursement of its costs to provide the court adequate substantiation in the form of receipts and other documents not only showing such costs were incurred, but that they were paid," and collecting cases for the proposition).  "In the absence of adequate substantiation, a party is not entitled to recover costs."  Id. (citing Douyon v. N.Y. Med. Health Care, P.C., 49 F. Supp. 3d 328, 352 (E.D.N.Y. 2014) (declining to award costs due to an absence of documentation); Joe Hand Promotions, Inc. v. Elmore, No. 11-CV-3761, 2013 WL 2352855, at *12 (E.D.N.Y. May 29, 2013) (same)); see also, e.g., Local Civil Rule 54.1(a).

Here, Plaintiffs submitted a "Client Expenses Report" delineating $6,589.61 in total costs incurred, which comprises of: $1,445 for a deposition; $402 for the filing fee; $1,373.35 for online research; $20 for photocopying; $1,014.94 for postal and Federal Express services; $2,216.25 for private process services; $100 for translation service; and $18.07 (presumably) for travel. (See Client Expenses Report, Ex. G, ECF No. 46-7, at ECF pp.22-29, attached to Brown Aff.)  No supporting invoices or bills have been provided to substantiate the requested costs.  Counsel made

the same fatal omission in Ryeco, which was the reason the Ryeco Court denied plaintiffs' request for all costs other than the Court's filing fee.  See Ryeco R*R Decision, at *11 (citing Piedra v. Ecua Rest., Inc., No. 17-CV-3316, 2018 WL 1136039, at *20 (E.D.N.Y. Jan. 31, 2018) ("[T]he Court cannot simply accept at face value the other costs that plaintiff's counsel seeks, such as service of process and translator services, without additional supporting documentation for those costs."), report and recommendation adopted in relevant part by 2018 WL 1135652 (Feb. 28, 2018)).  Thus, as in Ryeco (which provided clear guidance on what is required to properly advance a request for costs in the context of default judgment), because Plaintiffs have not substantiated their requested costs with the requisite supporting documentation, other than the Court's filing fee, Plaintiffs have not established entitlement to their costs in this instance.[2] However, because the Court may take judicial notice of the payment of its filing fee, see Jacobi Tool & Die, 2019 WL 7599891, at *6, Plaintiffs have established their entitlement to that cost.  (See Docket Text to ECF 1 ("filing fee $402, receipt number ANYEDC-

---

[2]  The Court further notes, that similar to PACER fees, fees for online research are generally considered part of a firm's overhead and, therefore, not reimburseable.  See, e.g., Jacobi Tool & Die, 2019 WL 7599891, at *7 (quoting Cardoza v. Mango King Farmers Mkt. Corp., No. 14-CV-3314, 2015 WL 5561033, at *19 (E.D.N.Y. Sept. 1, 2015) ("Plaintiffs have failed to show the Court how the attorney's fees are not crafted to absorb such fees.")).

15242950").)   Hence, Plaintiffs are entitled to $402.00 only in costs.

<u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Default Judgment (ECF No. 45) is GRANTED in part and DENIED in part;

**IT IS FURTHER ORDERED** that Plaintiffs' counsel is directed to disburse to the Plaintiffs the $10,522.00 recovered from Defendants' accounts receivable; and

**IT IS FURTHER ORDERED** that, <u>by no later than May 5, 2023</u>, Plaintiffs' counsel is to submit a revised proposed Final Default Judgment drafted in accordance with the Court's ruling herein.  An accompanying worksheet delineating relevant calculations is to be included for the Court's consideration.

**SO ORDERED.**

<u>/s/ JOANNA SEYBERT</u>
Joanna Seybert, U.S.D.J.

Dated:   April 17, 2023
         Central Islip, New York